UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JULIUS ANDERSON, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:22-CV-1014-JD-MGG |
| SCOTT BATSEL, et al., | |
| Defendants. | |

OPINION AND ORDER

Julius Anderson, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Anderson alleges that, on September 26, 2021, Sgt. Scott Batsel denied him a video visit with his mother. The two argued about this,[1] and Anderson, who was begging to see his mom, said he would die to see her. This was construed as a threat,

---

[1] Anderson asked to see a "white hat" or supervisor. Sgt. Batsel said he was the white hat, but Anderson wanted to see a lieutenant or captain. Anderson argues that this violated his rights, but he has no constitutional right to talk with a supervisor on demand.

and Sgt. Batsel reached for his mace. Anderson tried to stop Sgt. Batsel from spraying him, and the two fought. Sgt. Batsel then sprayed Anderson with mace and began hitting him. Anderson stopped fighting but Sgt. Batsel kept hitting him. Anderson fled but Sgt. Batsel chased him and continued hitting him. Anderson got into a fetal position and tried to protect his head, and Sgt. Batsel continued to hit him. The complaint indicates that another inmate pulled Sgt. Batsel off Anderson. Sgt. Stone arrived and told Anderson to cuff up. Sgt. Batsel resumed hitting Anderson. Sgt Stone ordered another officer to stop Sgt. Batsel, but the hitting continued until Anderson was in cuffs.

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Giving Anderson the benefit of the inferences to which he is entitled at this stage of the case, he states a plausible excessive force claim against Sgt. Batsel.[2]

---

[2] It is unclear if Anderson is attempting to raise a failure to intervene claim against Sgt. Stone. However, to the extent that he is, he has not stated a claim. State actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The complaint does not allege that Sgt. Stone was present for the entire event, and when he did arrive, he ordered another officer to stop Sgt. Batsel while

Sgt. Stone took Anderson to see a nurse[3] who authorized Sgt. Stone to take Anderson to MSU, which is where suicidal inmates are housed. Anderson was escorted to MSU by Sgt. Stone and a female guard. Anderson was required to undress in front of the female guard while another female guard monitored the cameras. Sgt. Stone did not immediately provide him with the materials permitted in the MSU by IDOC policy: a mattress, boxers, t-shirt, sandals, and a turtle suit. Anderson did not receive them until ten or eleven at night when the shift changed.

Merely being seen naked, even by members of the opposite sex, does not state a claim.

> Guards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life. After *Wolfish* and *Hudson*, monitoring of naked prisoners is not only permissible . . . but also sometimes mandatory.
>  . . .
>  Surveillance of prisoners is essential, as *Wolfish* establishes. Observation of cells, showers, and toilets is less intrusive than the body-cavity inspections *Wolfish* held permissible. Guards do the surveillance. Male guards and female guards too . . ..
>  . . .
>  [F]emale guards . . . see male prisoners in states of undress. Frequently. Deliberately. Otherwise they are not doing their jobs.

*Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995). Therefore, Anderson may not proceed against Sgt. Stone on this claim.

Anderson also alleges that Sgt. Stone was retaliating against him by not providing the materials permitted by IDOC policy. "To prevail on his First Amendment

---

he was placing Anderson in cuffs. Thus, Anderson has not pled facts from which a reasonable jury could infer that Sgt. Scott had a realistic opportunity to stop Sgt. Batsel and failed to do so.

[3] Anderson complains that the nurse was Sgt. Batsel's fiancé, but that is not relevant to the claims being raised here.

retaliation claim, [Anderson] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendant['s] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Anderson has not identified any activity protected by the First Amendment, and he therefore cannot proceed on this claim.

Anderson also filed a motion to reconsider. ECF 11. He appears to be seeking reconsideration of the court's orders granting him leave to proceed in forma pauperis, assessing an initial partial filing fee, and ordering him to show cause why the case should not be dismissed for failure to pay the initial partial filing fee. Anderson already addressed the concerns raised in the order to show cause (ECF 8), and the case was not dismissed. Therefore, this motion will be denied as moot.

For these reasons, the court:

(1) DENIES Julius Anderson's motion for reconsideration as MOOT (ECF 11);

(2) GRANTS Julius Anderson leave to proceed against Sgt. Scott Batsel in his individual capacity for compensatory and punitive damages for using excessive force against Anderson, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Sgt. J. Stone;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sgt. Scott Batsel at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sgt. Scott Batsel to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 19, 2023

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT